2021R01141/EAB

RECEIVED

SEP 04 2024

AT 8:30_____M
CLERK, U.S. DISTRICT COURT - DNJ

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | Honorable Tonianne J. Bongiovanni |
| v. | Mag. No. 24-3036 (TJB) |
| MARTIN MOORE and ANDRE TROTT | **CRIMINAL COMPLAINT** |

I, Sarah Sullivan, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

**SEE ATTACHMENT A**

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this Complaint is based on the following facts:

**SEE ATTACHMENT B**

continued on the attached pages and made a part hereof.

/s/ Sarah Sullivan
Sarah Sullivan, Special Agent
Federal Bureau of Investigation

Attested to by telephone pursuant to
Fed. R. Crim. P. 4.1(b)(2)(A)
on September 4, 2024,
in the District of New Jersey

Honorable Tonianne J. Bongiovanni
United States Magistrate Judge
Name and Title of Judicial Officer

Signature of Judicial Officer

## ATTACHMENT A

### Count One
### (Conspiracy to Commit Federal Program Theft)

From in or about February 2018 to in or about May 2022, in Mercer County, in the District of New Jersey and elsewhere, defendants

**MARTIN MOORE and**
**ANDRE TROTT**

did knowingly and intentionally conspire and agree with each other, and others, to embezzle, steal, obtain by fraud, intentionally misapply, and otherwise without authority knowingly convert to the use of persons other than the rightful owner $5,000 or more in overtime wages, which constituted money owned by, and under the care, custody and control of the City of Trenton, contrary to Title 18, United States Code, Section 666(a)(1)(A).

In violation of Title 18, United States Code, Section 371.

## Count Two
## (False Statements)

On or about May 10, 2022, in Burlington County, in the District of New Jersey and elsewhere, defendant

**MARTIN MOORE**

did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States, namely a criminal investigation conducted by the Federal Bureau of Investigation, Environmental Protection Agency, and the United States Department of Housing and Urban Development.

In violation of Title 18, United States Code, Section 1001(a)(2).

**ATTACHMENT B**

I, Sarah Sullivan, am a Special Agent with the Federal Bureau of Investigation ("FBI"). I am fully familiar with the facts set forth herein based on my own investigation, my conversations with other law enforcement officers, and my review of reports, documents and other items of evidence. Where statements of others are related herein, they are related in substance and part. Because this complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation. The contents of documents and the statements and conversations of individuals referenced below are provided in substance and in part, unless otherwise indicated. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged. Dollar amounts, and other figures cited herein are approximations.

**I.   Defendants, Entities, and Background of Lead Inspections and Meal Deliveries**

1. At all times relevant to this Complaint:

    A. Defendant MARTIN MOORE ("MOORE") was a Principal Registered Environmental Health Specialist for the City of Trenton, Bureau of Environmental Health ("BEH"). BEH was a subdivision of the City of Trenton, Department of Health and Human Services ("Trenton HHS"). As a Principal Registered Environmental Health Specialist, MOORE supervised a team of Registered Environmental Health Specialists and Public Health Investigators who comprised the BEH, performing, among other duties, inspections of residential properties in and around Trenton for the detection and removal of lead contamination, improvement of air quality, and reduction of other environmental hazards. MOORE also performed lead inspections himself and was certified by the New Jersey Department of Health ("NJ DOH") as a lead inspector.

    B. Defendant ANDRE TROTT ("TROTT") was a Senior Registered Environmental Health Specialist for BEH. As a Senior Registered Environmental Health Specialist, TROTT performed, among other duties, inspections of residential properties in and around Trenton for the detection and removal of lead contamination, improvement of air quality, and reduction of other environmental hazards. TROTT was certified by NJ DOH as a lead inspector.

    C. Michael Ingram ("Ingram") was a Public Health Investigator for BEH. As a Public Health Investigator, Ingram performed, among other duties, inspections of residential properties in and around Trenton for the detection and removal of lead contamination, improvement of

air quality, and reduction of other environmental hazards. Ingram was certified by NJ DOH as a lead inspector.

        D.    William Kreiss ("Kreiss") was a Registered Environmental Health Specialist for BEH. As a Registered Environmental Health Specialist, Kreiss performed, among other duties, inspections of residential properties in and around Trenton for the detection and removal of lead contamination, improvement of air quality, and reduction of other environmental hazards. Kreiss was certified by NJ DOH as a lead inspector.

        E.    Meraj Fatima ("Fatima") was a Registered Environmental Health Specialist for BEH. As a Registered Environmental Health Specialist, Fatima performed, among other duties, inspections of residential properties in and around Trenton for the detection and removal of lead contamination, improvement of air quality, and reduction of other environmental hazards. Fatima was certified by NJ DOH as a lead inspector.

        F.    BEH was a department within the City of Trenton. The City of Trenton received benefits in excess of $10,000 in each of the calendar years 2018 through 2022 under federal programs involving grants, contracts, subsidies, loans, guarantees, insurance, and other forms of federal assistance, within the meaning of Title 18, United States Code, Sections 666(b) and 666(d)(5).

        G.    Pursuant to state law, Trenton HHS was required to screen all children less than six years of age for elevated blood lead levels to protect children from adverse health effects due to exposure to lead hazards in residences and in the environment. When screening of a child revealed that the blood lead level exceeded the permissible amount, Trenton HHS was required to coordinate, oversee, and provide the necessary services to identify lead sources, eliminate a child's lead exposure, and reduce the child's blood lead level below five micrograms per deciliter (g/dL). As part of these services, a public health nurse was required, among other things, to conduct, along with an inspection team, a home visit of the residence where the child lived.

        H.    Generally, the inspection teams conducting the home visits were comprised of a public health nurse and, depending on the size of the property, three to five BEH employees who were certified as lead inspectors. During an inspection, the assigned BEH inspection team tested different areas of the residence for the presence of lead-based paint and leaded dust. Additionally, Trenton HHS was required to collect soil samples outside of the residence to be tested for the presence of lead. While some members of the BEH inspection teams examined the residences to test for lead, others on the team, or the public health nurse, interviewed the residents and documented any responses in a questionnaire designed to determine the source of any lead

contamination.

I. When lead was identified at the inspected property, Trenton HHS was required to direct the property owner to hire a licensed lead evaluation firm or lead abatement firm to remove the lead hazards from the property.

J. Upon completion of abatement at a property, Trenton HHS was required to reinspect the property to determine whether the lead hazards identified in the initial inspection had been satisfactorily eliminated. Thereafter, the property owner was required to obtain independent clearance testing through the services of a lead inspector certified by NJ DOH.

K. Beginning in or around 2018, Trenton began drawing funds from a State grant for childhood lead testing ("State Childhood Lead Grant") that was awarded to the City of Trenton to conduct lead inspections at residences which had reported having children with elevated levels of lead in their blood.

L. Generally, members of BEH performed the lead inspections scheduled by the public health nurse after their normal workday ended at approximately 4:30 p.m., entitling them to compensation for this overtime work above their hourly wage. Supervisors within Trenton HHS were authorized to approve overtime hours for BEH employees who performed these lead inspections. Costs associated with the inspection of properties by BEH inspection teams were reimbursable to the City of Trenton through drawdowns from the State Childhood Lead Grant.

M. Trenton also received federally allocated funds from the United States Department of Housing and Urban Development ("HUD") under the Community Development Block Grant ("CDBG"). The CDBG was a program designed to develop viable urban communities by providing decent housing, a suitable living environment, and economic opportunities, principally for persons of low- and moderate-income levels. Eligible activities to be funded under the CDBG included public improvements, housing rehabilitation and preservation, and public services, including a meal program to prepare and deliver meals throughout Trenton to the city's most vulnerable and needy populations—the homeless, disabled, seniors, and low-income individuals and families.

N. On days where meal deliveries occurred, those BEH members who participated in delivering those meals, including MOORE, TROTT, Ingram, and Kreiss, typically obtained the meals to be delivered from a Trenton soup kitchen before driving the meals to the delivery addresses.

    O. Similar to their overtime work conducting lead inspections, members of BEH who participated in the CDBG meal delivery program submitted overtime hours to deliver these meals to needy Trenton residents from in or about April 2020 to in or about May 2021.

    P. In addition to time sheets reflecting all hours worked, BEH employees completed a form which recorded any overtime worked during a two-week reporting period. When a BEH employee documented overtime for lead inspection related work, the employee entered "Lead," or otherwise characterized the work as lead inspection related, in the section of the form titled: "Work Performed," and listed the range of hours during which the inspection-related work purportedly occurred in the sections of the overtime sheet titled: "Overtime Start" and "Overtime End." Similarly, if the overtime work related to the CDBG meal delivery program, the BEH employee would characterize that work on the time sheet by including the word "meal" or "meals," often with additional description, such as "City of Trenton meals." Above the employee signature line of the overtime form, a notification stated: "I hereby certify that the time … reflected herein is accurate." Signature lines for "Supervisor" and separately for "Director" fell below a notification stating: "I hereby verify that the time record reflected herein is accurate."

    Q. A completed overtime form indicated that the employee had performed the work reflected on the form. The City of Trenton received the overtime form signed by the BEH employee, as verified by the employee's supervisor and Director, and, in turn, paid the BEH employee, ordinarily at a rate at least one-and-a-half times higher than the employee's normal wage.

    R. MOORE's duties and responsibilities included, among others, overseeing and directing other BEH employees in connection with lead inspections administered under the State Childhood Lead Grant and meal deliveries under the CDBG meal delivery program.

## II. The Overtime Fraud Scheme

  2. It was the goal of the conspiracy for MOORE and TROTT, and others, to obtain payments from the City of Trenton for work they did not perform, by fraudulently inflating the overtime hours they claimed to have worked relating to residential lead inspections and meal deliveries under the CDBG meal delivery program.

  3. The conspiracy was carried out, as follows:

    A. MOORE directed members of BEH, including TROTT, to falsely report on time sheets and overtime forms overtime relating to lead inspections performed on residential properties and meal deliveries through the

7

CDBG meal delivery program that exceeded the actual time it took for the BEH employees to complete such activities. MOORE also falsely reported on time sheets and overtime forms overtime exceeding the time it actually took him to complete all activities related to such inspections and deliveries.

    B. At MOORE's direction, members of the BEH lead inspection and meal delivery teams, including TROTT, submitted false and fraudulent time sheets and overtime forms to MOORE, who signed and purported to verify the fraudulent forms before submitting them to the City of Trenton so that the BEH inspection and meal delivery team members would be paid. MOORE also submitted his own false and fraudulent time sheets and overtime forms so that he, too, would be paid for overtime work that he did not perform. As a result, several BEH inspection and meal delivery team members received compensation for overtime work that they did not perform.

### *Examples of MOORE's Overtime Fraud*

    4. On or about May 11, 2019, May 12, 2019, May 26, 2019, November 19, 2019, November 15, 2021, November 29, 2021, November 30, 2021, February 10, 2022, April 26, 2022, April 27, 2022, April 28, 2022, May 4, 2022, and May 5, 2022, among other dates, in Trenton, MOORE falsely represented on multiple overtime forms that he had completed overtime to perform work related to lead inspections in excess of the time it actually took him to perform this work.

    5. On several of the dates set forth in paragraph 4, above, MOORE also signed overtime forms of at least one, and on some occasions as many as four, of his co-conspirators, including TROTT, Ingram, Kreiss, and Fatima, knowing that the forms were false inasmuch as the co-conspirators had not worked the hours represented on the forms. By doing so, MOORE fraudulently authorized the payment of overtime wages to those co-conspirators. For example, MOORE submitted his own overtime form reflecting overtime work performed on or about April 28, 2022, and further signed overtime forms for TROTT, Ingram, Kreiss, and Fatima, for work allegedly performed that same day, knowing that none of them, including MOORE himself, had worked the hours represented on the forms. By doing so, MOORE fraudulently authorized the payment of three hours overtime wages for each BEH inspection team member on that date, and two hours for himself.

    6. In addition, MOORE submitted time forms falsely claiming that he had worked overtime in connection with residential lead inspections of residences located in or around Trenton on or about Saturday, May 11, and Sunday, May 12, 2019, and Sunday, May 26, 2019, even though evidence obtained during the investigation indicated that MOORE was in Massachusetts on May 11 and 12, 2019, and in Ohio on May 26, 2019.

7.  From in or about March 2018 to in or about May 2022, MOORE knowingly and intentionally accepted payments from the City of Trenton for overtime work related to lead inspections that he did not perform, but nonetheless fraudulently claimed that he did, including but not limited to the following payments:

| Approximate Date of Payment to MOORE | Approximate Amount Paid as a Result of the Fraud |
|---|---|
| May 16, 2019 | $258.93 |
| May 30, 2019 | $345.25 |
| June 13, 2019 | $345.25 |
| November 27, 2019 | $129.47 |
| November 24, 2021 | $137.40 |
| December 9, 2021 | $274.79 |
| February 17, 2022 | $140.14 |
| May 12, 2022 | $513.85 |

8.  Additionally, on or about May 11, 2020, May 18, 2020, May 26, 2020, October 30, 2020, November 2, 2020, November 3, 2020, November 5, 2020, November 9, 2020 through November 12, 2020, November 17, 2020, and February 11, 2021, among other dates, in Trenton, MOORE falsely represented on multiple overtime forms that he had completed overtime to deliver meals under the CDBG meal delivery program in excess of the overtime hours it took MOORE to actually complete the deliveries.

9.  For several of the meal deliveries on the dates set forth in paragraph 8, above, MOORE also signed overtime forms of at least one, and on some occasions as many as three, of his co-conspirators, including TROTT, Ingram, and Kreiss, knowing that the forms were false inasmuch as the co-conspirators had not worked the overtime hours represented on the forms. By doing so, MOORE fraudulently authorized the payment of overtime wages to those co-conspirators. For example, MOORE submitted his own overtime form reflecting overtime hours worked on or about November 10, 2020, and further signed forms for TROTT, Ingram, and Kreiss, knowing that neither he nor they had worked the overtime hours represented on the forms, thereby fraudulently

authorizing the payment of three hours overtime wages for each BEH member who delivered meals on that date, and two hours for Kreiss.

10. From in or about May 2020 to in or about May 2021, MOORE knowingly and intentionally accepted payments from the City of Trenton for overtime work related to meal deliveries under the CDBG meal delivery program that he did not perform, but nonetheless fraudulently claimed that he did, including but not limited to the following payments:

| Approximate Date of Payment to MOORE | Approximate Amount Paid as a Result of the Fraud |
|---|---|
| May 28, 2020 | $258.94 |
| June 11, 2020 | $129.47 |
| November 12, 2020 | $517.88 |
| November 25, 2020 | $748.05 |
| February 18, 2021 | $64.73 |

***Examples of TROTT's Overtime Fraud***

11. On or about April 5, 2019, May 19, 2019, May 23, 2019, November 30, 2021, February 10, 2022, February 15, 2022, March 1, 2022, April 12, 2022, April 14, 2022, April 27, 2022, April 28, 2022, April 29, 2022, May 2, 2022, and May 9, 2022, among other dates, in Trenton, TROTT falsely represented on multiple overtime forms that he had completed overtime to perform work related to lead inspections in excess of the time it actually took him to perform this work.

12. On the dates set forth in paragraph 11, above, MOORE signed TROTT's overtime forms, understanding that they were false inasmuch as TROTT had not worked the hours represented on the forms, and thereby fraudulently authorized the payment of overtime wages to TROTT.

13. From in or about March 2018 to in or about May 2022, TROTT knowingly and intentionally accepted payments from the City of Trenton for overtime work related to lead inspections that he did not perform, but nonetheless fraudulently claimed that he did, including but not limited to the following payments:

| Approximate Date of Payment to TROTT | Approximate Amount Paid as a Result of the Fraud |
|---|---|
| April 18, 2019 | $98.86 |
| May 30, 2019 | $274.61 |
| December 9, 2021 | $98.86 |
| February 17, 2022 | $108.14 |
| March 3, 2022 | $108.14 |
| March 17, 2022 | $108.14 |
| April 28, 2022 | $216.27 |
| May 12, 2022 | $432.54 |
| May 26, 2022 | $108.14 |

14. Additionally, on or about February 11, 2021 and February 22, 2021, among other dates, in Trenton, TROTT falsely represented on his overtime form that he had completed overtime to deliver meals under the CDBG meal delivery program in excess of the overtime hours it actually took him to deliver the meals.

15. On or about February 18, 2021 and March 4, 2021, TROTT knowingly and intentionally accepted payments, in each case in the amount of $49.43, from the City of Trenton for overtime work related to meal deliveries under the CDBG meal delivery program that he did not perform, but nonetheless fraudulently claimed that he did.

**Text Messages Between MOORE, TROTT and other BEH Members**

16. In furtherance of their scheme, MOORE, TROTT, and others, including Ingram, Kreiss, and Fatima, frequently exchanged text messages about their unlawful overtime fraud scheme. For example, on or about May 2, 2022, while TROTT falsely reported on his timesheet three hours of overtime for work related to lead inspections, TROTT sent a text message to a friend of his stating "I have overtime… but i should be home by 5:30-6pm." However, TROTT's May 2, 2022 time sheet reflected that he worked overtime from 4:30 to 7:30 p.m., a period for which he was paid. Additionally, cell site location lawfully obtained by law enforcement reflected that, at approximately 6:02 p.m.

11

on May 2, 2022, TROTT was in or around the town of Burlington located in Burlington County, not Mercer County where the inspection purportedly was performed.

17. To conceal their scheme, previously, on or about November 1, 2020, MOORE counseled TROTT, Kreiss, and Ingram on the need to be careful and discreet when padding their overtime hours. Discussing overtime hours for meal deliveries under the CDBG program, MOORE advised TROTT, Kreiss, and Ingram to claim no more than three hours of overtime to avoid being discovered, as follows:

- Kreiss (11/1/2020, 9:44 a.m.): "[City of Trenton, Director of Social Work and Community Relations] has called me at 7pm asking me questions about [my] time lol"

- TROTT (11/1/2020, 9:45 a.m.): "Yupppp she Santa Claus'ing us!!!! Lol Who been naughty or nice!!! Lol"

- TROTT (11/1/2020, 9:46 a.m.): "She ask me all the time... when did I get finish or when did mike get finished etc..."

- TROTT (11/1/2020, 9:47 a.m.): "We're always going to say after 5:30"

- MOORE (11/1/2020, 9:47 a.m.): "Be careful how you respond"

- TROTT (11/1/2020, 9:48 a.m.): Liked prior comment.

- TROTT (11/1/2020, 9:48-9:49 a.m.): "The routes should end about 6pm Martin correct...? . . . [f]or us to get our 3 and 2 hrs"

- MOORE (11/1/2020, 9:50 a.m.): "For three hours yes but I think 530 would be safe to say"

- Ingram (11/1/2020, 9:55 a.m.): "I don't get it...why is [City of Trenton, Director of Social Work and Community Relations] consistently asking us what time we finish even to the point she wants to know what time any of you finish"

- MOORE (11/1/2020, 10:03 a.m.): "Mike she checks every hour. She is always scared"

- Ingram (11/1/2020, 10:05 a.m.): "Scared …of what Martin"

- Kreiss (11/1/2020, 10:06 a.m.): "Signing off and Being responsible for a [City of Trenton employee] type scam maybe?"

- Ingram (11/1/2020, 10:07 a.m.): "That's my first thought Billy…"

- MOORE (11/1/2020, 10:07 a.m.): "Absolutely"

- Ingram (11/1/2020, 10:07 a.m.): "Give me the rule book and I'll follow…"

- MOORE: (11/1/2020, 9:45 a.m.): "As long as we keep it to the three hours and probably two for [individual] we won't have any problems"

18. Approximately two weeks later, on or about November 19, 2020, during the period when BEH employees were participating in the CDBG meal delivery program, MOORE texted TROTT, Ingram, and Kreiss, stating, "And please everyone put in three hours every time you go out."

19. On or about February 11, 2021, MOORE texted TROTT, Ingram, and Kreiss, stating, "FYI, I am going to start picking up the meals at 2pm. The 130 time I was finished easily by 230. I still feel there are eyes on us". That text notwithstanding, on February 11, 2021, MOORE's time sheet falsely reported that MOORE worked overtime for "City Meals" between the hours of 3:00 p.m. and 4:30 p.m.

20. On or about May 19, 2021, MOORE texted TROTT, Ingram and Kreiss, stating that the City of Trenton, Director of Social Work and Community Relations discovered that a Trenton city employee had completed delivering meals by 3:15 p.m. on a particular date, thereby jeopardizing the BEH delivery team's ability to claim false overtime hours past that general time. Moments later, the following text exchange ensued:

- MOORE (5/19/2021 6:16 p.m.): "Between us I heard [Trenton city employee] went off with [] and [] complaining that he did entire run by him self. Somehow [] found out that he still finished at 315pm ! Without help!! We have a problem! She is bringing him in tomorrow with a meeting with the director!!"

- TROTT (5/19/2021 6:18 p.m.): "Uggghhhhh!!!"

- Kreiss (5/19/2021 6:19 p.m.): "All these dudes are big babies"

- TROTT (5/19/2021 6:22 p.m.): "That's the truth Billy!"

- Ingram (5/19/2021 6:23 p.m.): "I got another side of the story from []. He said that he couldn't work with [] and wanted out as of know [sic] he's working the nurses at the vaccine sites."

- MOORE (5/19/2021 6:23 p.m.): "Tell you what's going to happen. We are going to have to do the food run for free. No overtime"

- TROTT (5/19/2021 6:24 p.m.): "Wooowwwwwwww!"

- MOORE (5/19/2021 6:25 p.m.): "They have messed it up for everyone! I don't want to do it anymore."

- Kreiss (5/19/2021 6:25-26 p.m.): "So what's out [sic] side of the story? We always worked till 4-415ish?"

- MOORE (5/19/2021 6:26 p.m.): "I honestly don't know"

21. Additionally, on or about April 12, 2022, at approximately 6:23 p.m., TROTT texted Fatima, Ingram, Kreiss, and another BEH employee, as follows: "FYI: finished! Headed home." Earlier that date, at approximately 5:30 p.m., in response to a question from Fatima asking TROTT: "Ru coming to do the dust wipes andre," TROTT responded: "[y]es im getting on the elevator now to come..." Accordingly, while TROTT's text messages indicate he worked less than one hour at this lead inspection, his time sheet for April 12, 2022, falsely represented that he worked three hours of overtime conducting lead inspections on that date.

22. Two days later, on or about April 14, 2022, TROTT, Fatima, Kreiss, and Ingram were scheduled to perform a lead inspection on a home in Trenton. While TROTT's time sheet for April 14, 2022 falsely reflected three hours of overtime supposedly spent for the inspection, cell site location data lawfully obtained by law enforcement indicated that he was not at the inspection location for three hours. Additionally, TROTT, Fatima, Kreiss, and Ingram, while expressing their desire to record overtime for the inspections, engaged in a group text message, including the following:

14

- Kreiss (4/14/2022 2:20 p.m.): "Ill be there at 240"

- TROTT (4/14/2022 2:22 p.m.): "In my Martin voice... 'there are eyes at city hall! Leaving before 2:30pm would be suspicious...' lol"

- Kreiss (4/14/2022 2:26 p.m.): "My response in Martins voice Yehhhhhhhhhssss"

- TROTT (4/14/2022 2:27 p.m.): Laughing Emoji (laughed at prior comment from Kreiss)

23. On or about April 27, 2022, at 5:47 p.m., TROTT texted MOORE requesting that MOORE call TROTT when MOORE was finished talking to the Director. In response, at 5:47 p.m., MOORE texted TROTT, "I'm in meeting now [about] the mayors ball." By approximately 7:21 p.m., cell site location data lawfully obtained by law enforcement reflected that MOORE was in or around Bordentown, New Jersey. MOORE's time sheet for that date falsely reported that MOORE performed overtime work for "Lead" for two hours between 5:30 p.m. and 7:30 p.m. at a residence located in Trenton. Additionally, BEH inspection records do not list MOORE as one of the inspectors present for the inspection that took place in Trenton on April 27, 2022.

### *MOORE's False Statements to Federal Agents*

24. On or about May 10, 2022, MOORE was interviewed at his residence by agents of the FBI regarding his role as a Principal Registered Environmental Health Specialist for BEH in connection with lead inspections conducted in and around Trenton from in or about 2018 to in or about 2022. Before asking MOORE any questions, an FBI Special Agent advised MOORE that the interview was voluntary and that it was a crime to lie to an FBI agent. MOORE proceeded with the interview. During the interview, MOORE falsely stated that there was no situation where he had purposely misrepresented his hours on his timesheet, and no situation where he had claimed overtime hours for periods of time that he was outside of the State of New Jersey.

25. However, these statements were knowingly and willfully false, fictitious, and fraudulent because, as MOORE then and there knew, (i) he had on many occasions, including those set forth in paragraph 4, above, knowingly and intentionally misrepresented the amount of overtime hours worked, and (ii) he had on more than one occasion knowingly and intentionally claimed on time forms overtime hours for periods he was outside of the State of New Jersey, including on or about May 11 and 12, 2019, when he was in Massachusetts, and

May 26, 2019, when he was in Ohio, but claimed overtime hours during these periods for work related to lead inspections purportedly performed in New Jersey.